# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| DWAYNE STOVALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CV413-025 |
| | ) |
| ADMINISTRATOR DUNCAN; | ) |
| MRS. PITTMAN; CHARLES | ) |
| WOODALL, | ) |
| PAUL SIKES, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

Dwayne Stovall is back with another 42 U.S.C. § 1983 complaint against officials at the Liberty County Jail. In *Stovall v. State Dist. Atty*, CV412-204, doc. 1 (S.D. Ga. Jul. 30, 2012) (*Stovall I*), he sued Liberty County Jail officials and a district attorney, claiming that he had been denied access to legal research, had his legal mail confiscated, and was refused privacy during meetings with his public defender. *Id.*, doc. 8, 2012 WL 5722604 at * 1 (S.D. Ga. Nov. 15, 2012). On the last issue the Court concluded that he stated a claim. 2012 WL 5722604 at * 2 ("Because such a practice unreasonably burdens a detainee's opportunity to consult with his attorney in confidence, *Alster v. Goord*, 745 F. Supp.

2d 317, 341 (S.D.N.Y.2010), the Court is satisfied that Stovall has stated a claim. . . .").

In this case against a new batch of Liberty County defendants, Stovall alleges that on January 11, 2013, he was deprived of his right to meet with his lawyer in confidence to discuss his upcoming trial. Doc. 1 at 5.[1] A jail official refused to depart earshot range when he tried to confer with counsel. *Id.* He also suspects that, despite a jail official's assurance, an intercom system was left on to capture his conversations with counsel. *Id.* He states that (in raw, unedited form except for bracketed additions):

> [d]uring consultation I divulged to my lawyer [that] the intercom was how information I only gave him was getting to Detectives and Prosecutors. A few jail officers alerted me after I filed [*Stovall* I].

---

[1] As Stovall is proceeding *in forma pauperis* ("IFP"), the Court will now screen his case under 28 U.S.C. § 1915(e)(2) (B)(ii), which permits a district court to dismiss *sua sponte* an IFP plaintiff's claims for failure to state a claim before service of process. *See also* 28 U.S.C. § 1915A (courts must identify "cognizable claims" filed by prisoners or other detainees and dismiss claims which are frivolous, malicious, fail to state a claim for relief, or seek monetary relief from a defendant immune from such relief); 42 U.S.C. § 1997e(c)(2) (allowing dismissal on the same four standards provided by § 1915A as to any prisoner suit brought "with respect to prison conditions").

To "state a claim to relief," Stovall must allege a "plausible" claim. *See American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) ("[T]o survive a motion to dismiss, a complaint must now contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Tariq v. Chatman*, 2012 WL 3637729 at * 3 (M.D. Ga. Aug. 22, 2012).

> Liberty County Detective Charles Woodall would utilize the jail's control booth on occasions to access the hall intercom while [I was] discussing my charges [with my lawyer]. We thus found out how he knew the defense witnesses when we as of yet had not given the State any "Discovery" nor who was our witnesses. Since [that time] 2 witnesses refuse to testify since Woodall talked to them. He even tried to coerce my daughter. Twice. Due to the problem concerning my attorneys I have tried adamantly several times with Admin Duncan and Capt. Boyd to have privacy before my trial. I received no answer from either.

*Id.* Stovall thus sues Charles Woodall for listening in on his attorney-client conferences. *Id.* As it did in *Stovall I*, the Court concludes that Stovall has stated a claim against Woodall. *See Stovall*, 2012 WL 5722604 at * 2.

Plaintiff also raises a separate First Amendment claim. He says that in January 2012, he purchased a Georgia law enforcement handbook with a CD-ROM. Ms. Pittman, the jail's mail clerk, "placed the disc in my inmate property"[2] and never told him that it had arrived. *Id.* at 6. Another jail official did the same when an updating disk arrived months later. *Id.* In May 2012, plaintiff subscribed to an African hip-hop music magazine called "Smooth," which is "approved by [the] Georgia Dept. of

---

[2]   Stovall never completes the thought here. Consistent with its obligation to construe his writing liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Court will assume he means some sort of property *locker* or storage bin, where an inmate's property is stored until he exits the facility.

3

Corrections publications list" but Pittman derailed it to his property locker because she considered it "inappropriate" despite its lack of nudity or "sexual exploitation." *Id.* at 6-7. He administratively grieved the matter to no avail, and the jail refused to forward his magazines to his home. *Id.* at 7. When plaintiff later inquired about his CD-ROMs, "Lt. Markham and Sgt. Donaldson stated there [were] no CD-discs in my property [locker]." His later inquiries to Pittman yielded no response. And his "stored" magazines are now also missing. *Id.* at 7-8.

Stovall raises First Amendment (censorship) and due process violations. *Id.* at 8-9. He sues "Administrator Duncan" for failing to correct these wrongs, and impliedly alleges that Duncan was placed on notice of them via the grievance process. *Id.* at 9. He sues "Sgt. Donaldson" for reporting the absence of those materials from his property locker. *Id.* He also sues Pittman for censorship and property loss. *Id.* at 10. He evidently sues a "Sgt. Long" merely because Long ferried his updated CD-ROM disk to storage. *Id.* at 6. Pittman, Donaldson, Mrakham, Boyd and Long, Stovall says, all failed to give satisfactory answers when he asked what became of his CD-ROMs. *Id.* at 7. Finally, "[a]ll defendants are sued in their individual capacities." *Id.*

4

at 11. And, he pleads full exhaustion of his administrative remedies. *Id.*

"An inmate does not lose his First Amendment rights simply by means of his incarceration. *See, e.g., Cruz v. Beto*, 405 U.S. 319, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972). 'Prison walls do not form a barrier separating prison inmates for the protections of the Constitution, nor do they bar free citizens from exercising their own constitutional rights by reaching out to those on the inside.' *Thornburgh v. Abbot*, 490 U.S. 401, 407, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989) (internal quotations omitted). Inmates' First Amendment rights, however, must be exercised in view of the difficult task that is modern prison administration. *Id.*" *Daniels v. Harris*, 2012 WL 3901646 at * 4 (M.D. Ga. Aug. 8, 2012); *Prison Legal News v. Livingston*, 683 F.3d 201, 213 (5th Cir. 2012).

The case law shows that established Fourteenth Amendment Due process and First Amendment doctrines are applied on a case-by-case basis to literature-censorship cases. Such censorship is upheld if the regulation causing it furthers an important or substantial governmental interest unrelated to the suppression of expression, and the restriction is no greater than is necessary to the protection of that particular governmental interest. *Perry v. Sec'y, Fla Dept. of Corr.*, 664 F.3d

1359, 1364 (11th Cir. 2011). The regulation must be reasonably related to legitimate penological interests. *Id.* at 1364-65, cited in Ann., *Censorship of convicted prisoners' "nonlegal" mail*, 47 A.L.R.3D 1192 (1973).

Stovall's claim is weak at best. *See Jernard v. Owens*, 2012 WL 2131117 at *5 (M.D. Ga. May 10, 2012) (summary judgment to prison officials because they did not violate prisoner's constitutional right by barring his access to a "Prisoner Self Help Litigation Manual" he had ordered); *Daniels*, 2012 WL 3901646 at * 1, 6 (denying inmate's motion for injunctive relief against jail's policy that "limits inmates' outgoing and incoming mail to the use of a 6″ x 4″ postcard."). Nevertheless, the Court cannot say that he has failed to state a plausible First Amendment and Due Process claim against Pittman. And it is plausible that she was implementing Duncan's policy, so he, too, shall remain in this case for the moment. No basis has been pled, however, to retain the remaining defendants in this action; at most they formed transmission links for the property in question, rather than consciously enact and apply a rights-depriving policy against plaintiff.

To the extent that Stovall has pled a negligent deprivation claim

regarding his "lost" CD-ROMs and magazines, he states no claim. *Daniels v. Williams*, 427 U.S. 327, 330-31 (1986) (negligent loss of property is not actionable under the due process clause). To the extent he alleges any defendant intentionally converted his property to their own use or maliciously disposed of it, his claim would still fail, since state law affords a meaningful post-deprivation remedy for the loss. *Hudson v. Palmer*, 468 U.S. 517, 531-33 (1984). Under Georgia law, a prisoner is provided with a mechanism for pursuing a post-deprivation remedy. *See* O.C.G.A. § 51-10-1 (providing a cause of action in tort for the wrongful deprivation of personal property). This provision provides an adequate post-deprivation remedy to plaintiff in the instant case, and to the extent that the "seizure" of plaintiff's property was tortious, plaintiff is free to pursue his remedies in the state courts. *Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991).[3]

Accordingly, the Court "green lights" plaintiff Dwayne Stovall's "legal privacy" claim against defendant Charles Woodall, as well as his First and Fourth Amendment (Due Process) claims against defendants

---

[3] Plaintiff does not allege that he was prevented from pursuing a state law claim under O.C.G.A. § 51-10-1. As such, he cannot claim that the deprivation of property was unconstitutional as applied to him.

7

Pittman and Duncan. The remainder of the defendants should be **DISMISSED** from this case, the caption has been amended accordingly, the Clerk shall conform the docket, and all subsequent filings shall conform. The Clerk, meanwhile, is **DIRECTED** to forward a copy of this Report and Recommendation, along with Stovall's complaint, to the Marshal for service upon those defendants so that they may respond.

Stovall must pay for filing this lawsuit. Based upon his furnished information, he owes an initial partial filing fee of $44.80 . *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Plaintiff's custodian shall deduct $44.80 from Stovall's account and remit it to the Clerk of Court. The custodian also shall set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has been paid in full.

In the event plaintiff is transferred to another institution, plaintiff's present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from the plaintiff

shall be collected by the custodian at his next institution in accordance with the terms of this Order.

A copy of this Order and a copy of the Consent to Collection of Fees from Trust Account shall be served upon plaintiff and his current custodian. The payment portion of this Order is to be implemented immediately, as it is not subject to the adoption provision of Fed. R. Civ. P. 72(b).

**SO REPORTED AND RECOMMENDED** this  1st  day of April, 2013.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA