# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

DWAYNE STOVALL,                    )
                                   )
    Plaintiff,               )
                                   )
v.                                 )    Case No. CV413-025
                                   )
BRUCE DUNCAN;                      )
BRIGITTE PITTMAN; CHARLES          )
WOODALL,[1]                        )
                                   )
    Defendants.              )

## REPORT AND RECOMMENDATION

The defendants in this jail conditions case move for summary judgment against *pro se* inmate plaintiff Dwayne Stovall.

## I. Sixth Amendment

Previously the Court screened this 42 U.S.C. § 1983 case and ruled that Stovall stated a Sixth Amendment claim against Liberty County, Georgia police detective Charles Woodall. Doc. 6, *reported at* 2013 WL 1339712 (S.D. Ga. Apr. 1, 2013), *adopted*, doc. 39 (S.D. Ga. Mar. 3, 2014) (*Stovall II*). That claim is now subject to this Court's recent ruling in an

---

[1]   The Court has inserted the first names for "Mrs. Pittman" and "Administrator Duncan," as originally named by Stovall, doc. 1 at 1. *See* doc. 26-3 at 1; doc. 26-7 at 1. All subsequent filings shall conform to the above caption.

earlier Stovall lawsuit against different defendants. *Stovall v. State Dist. Atty*, CV412-204 (S.D. Ga. Jul. 30, 2012) (*Stovall I*). There he claimed that his Sixth Amendment rights had been violated when jail officials refused to grant him private meetings with his public defender regarding criminal charges against him. *Id.*, doc. 8, *reported at* 2012 WL 5722604 (S.D. Ga. Nov. 15, 2012). Stovall, this Court ruled, stated a claim that defendants had violated his Sixth Amendment right to the effective assistance of counsel. Doc. 8 at 5.[1]

The Court, however, has since abrogated that ruling, concluding that Stovall's case must be dismissed because he failed to plead prejudice even if guards overheard those conversations. Doc. 48 at 6-7. Also, no

> purpose [would] be served by allowing Stovall an opportunity to amend his complaint to assert that his defense of the criminal charges was prejudiced by the fact that guards were able to overhear his conversations with counsel. Any such claim would necessarily call into question the validity of his state conviction arising from his guilty plea to charges of child molestation and sexual exploitation of a child. As the Supreme Court explained in *Heck v. Humphrey*, 512 U.S. 477 (1994), a § 1983 damages claim that necessarily implies the invalidity of the plaintiff's criminal conviction or sentence simply "does not accrue until the conviction or sentence has been invalidated" on direct appeal or through some

---

[1] The Court is citing only to its docketing software's pagination; it may not always line up with each paper document's printed pagination.

form of collateral attack. *Id.* at 490; *id.* at 487 (a § 1983 claim for damages "that has *not* been so invalidated is not cognizable under § 1983."). As Stovall has not shown that his criminal conviction for child molestation and exploitation has been invalidated, it would be an exercise in futility to allow Stovall to amend his complaint to assert that his defense of those charges was prejudiced by the alleged intrusion into his attorney-client communications.

*Id.* at 7-8 (cite omitted).

Finally, Stovall's "surviving § 1983 claim rests upon the assertion that his Sixth Amendment rights were violated merely because his conversations with counsel *may* have been overheard by a jail guard. Such an assertion falls short of making out a claim for relief under § 1983." *Id.* at 8 (emphasis added). Speculation, after all, can advance no legal claim. *See Paylor v. Hartford Fire Ins. Co.,* ___ F.3d ___, 2014 WL 1363544 at * 3 (11th Cir. Apr. 8, 2014).

In this case against a new batch of Liberty County defendants, Stovall alleges that on January 11, 2013, he was deprived of his right to meet with his lawyer in confidence to discuss his then-upcoming criminal trial.[2] CV413-025, doc. 1 at 5. A jail official refused to depart earshot

---

[2] Stovall initially was evasive during his deposition in this case, insisting he could not recall what he was charged with, much less pled guilty to. Doc. 26-1 at 38; *but see id.* at 82 ("A. Child Molestation"). The attached Georgia Department of Corrections (GDOC) print-out shows that he is serving 20 years for child molestation and sexual exploitation of a child. This Court takes judicial notice of the GDOC record system.

range when he tried to confer with counsel. *Id.* He also suspects that, despite a jail official's assurance, an intercom system was left on to capture his conversations with counsel. *Id.* He insists that (in raw, unedited form except for bracketed additions):

> [d]uring consultation I divulged to my lawyer [that] the intercom was how information I only gave him was getting to Detectives and Prosecutors. A few jail officers alerted me after I filed [*Stovall* I]. Liberty County Detective Charles Woodall would utilize the jail's control booth on occasions to access the hall intercom while [I was] discussing my charges [with my lawyer]. We thus found out how he knew the defense witnesses when we as of yet had not given the State any "Discovery" nor who was our witnesses. Since [that time] 2 witnesses refuse to testify since Woodall talked to them. He even tried to coerce my daughter. Twice. Due to the problem concerning my attorneys I have tried adamantly several times with Admin Duncan and Capt. Boyd to have privacy before my trial. I received no answer from either.

*Id.* Stovall thus sues Woodall for listening in on his attorney-client conferences.[3] *Id.* As it did in *Stovall I*, the Court ruled that he stated a Sixth Amendment claim against Woodall. CV413-225, doc. 6 at 3. But also as in *Stovall I*, the Court is now abrogating that ruling and concluding this claim must be dismissed as *Heck*-barred.

---

*See* Fed. R. Evid. 201; *Keith v. DeKalb County, Ga*/, ___ F.3d ___, 2014 WL 1614286 at * 12 n. 18 (11th Cir. Apr. 23, 2014). As required by *Heck*, Stovall has not shown that these convictions have been vacated.

[3] Woodall denies this, and in fact attests that he is not even aware if the jail's intercom system enables such eavesdropping. Doc. 26-4 at 2 ¶5.

Nor has Stovall pled anything beyond sheer speculation on the prejudice component of this Sixth Amendment claim, so it fails on those grounds, too. Under the earlier-cited screening authority, doc. 6 at 2 n. 1, then, Stovall's Sixth Amendment claim must be dismissed, which means Woodall must be dropped as a defendant outright. That, in turn, moots his summary judgment motion. Doc. 28.

## II. First Amendment, Due Process

In contrast to *Stovall I*, plaintiff also raises separate First Amendment and Due Process claims here. *See Stauffer v. Gearhart*, 741 F.3d 574, 583-84 (5th Cir. 2014) (First Amendment, prison censorship case); *Daker v. Chatman*, 2007 WL 4061961 at * 3 (N.D. Ga. Oct. 31, 2007) (due process, prison censorship case). He says that in January 2012, he purchased a Georgia law enforcement handbook that arrived in paper and CD-ROM form. Brigitte Pittman, the jail's mail clerk, "placed the disc in my inmate property"[4] and never told him that it had arrived. CV413-025, doc. 1 at 6. Another jail official did the same when an

---

[4] Stovall never completes the thought in his Complaint, nor in his deposition. Doc. 26-2 at 56 ("They said, I went in and looked, Stovall, I don't see it in your property."). Consistent with its obligation to construe his writing liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Court will assume he means some sort of property *locker* or storage bin, where an inmate's property is stored until he exits the facility.

updating disk arrived months later. *Id.*

Also, in May 2012, Stovall subscribed to a magazine called "Smooth." He says it is "approved by [the] Georgia Dept. of Corrections publications list," but Pittman routed it to his property locker because she considered it "inappropriate" despite its lack of nudity or "sexual exploitation." Doc. 1 at 6-7. She did this, he complains, despite the fact that another "inmate receives 'Maxim' which is banned from some Georgia jails." *Id.* at 7. Plaintiff says he administratively grieved the matter to no avail,[5] and the jail refused to forward his magazines to his

---

[5] *See also* doc. 32 at 14; doc. 31 at 17-20 (his summary judgment response filings affirming this fact). For that matter, Stovall's judicial admission that he was availed and participated in a grievance process, despite his complaints about its deficiencies and result, disposes of his due process claim to the extent he may be said to raise one. *See Stauffer,* 741 F.3d at 587 (confiscation of magazines of prisoner in Sex Offender Treatment Program, pursuant to rule, did not deprive prisoner of due process, since he could, and did, use prison's grievance system to claim that he had been wrongly denied those magazines and prison administrators responded by investigating his claims and giving written justification for why he was not entitled to relief).

Plaintiff insists that his grievance appeal was frustrated, doc. 32 at 19-20, but defendants have submitted unrebutted evidence of Stovall's grievance and the jail's response on that score. Doc. 26-10 at 14-15; *see also* doc. 32 at 25 (Stovall did not affirm his factual counter-assertions under penalty of perjury); doc. 31 at 17 (Stovall's own filing showing that he grieved and received a response to his "missing CD-ROM" claim, and it shows that he received one CD-ROM "in his property locker and on 1/08-13 he return[ed] package back to law publishing company so we don't have the other one."). For that matter, inmates have no right to a particular grievance procedure, so no due process claim can be premised on complaints about them. *Cato v. Yale,* 2014 WL 1045751 at * 1 (9th Cir. Mar. 19, 2014); *Ramirez v. Galaza,* 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific grievance procedure.").

home. *Id.* at 7. When Stovall later inquired about his CD-ROMs, "Lt. Markham and Sgt. Donaldson stated there [were] no CD-discs in my property [locker]." *Id.* at 7-8. His later inquiries to Pittman yielded no response. And his "stored" magazines are now also missing. *Id.* at 8. He raised property-deprivation, First Amendment, and Due Process claims. *Id.*

The Court dismissed Stovall's property-loss claims in light of available state remedies, doc. 6 at 6-7, then concluded that he stated First Amendment (censorship) and Due Process violations against defendants Pittman and Duncan. Doc. 6 at 7-8. Those defendants now move for summary judgment[6] on those claims. Doc. 28. They raise a

---

[6] Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence is such that a reasonable jury could decide in the non-moving party's favor. *Id.* at 248 (noting that the test for determining whether a genuine issue of material fact exists is the same as the test for granting a directed verdict). The Court must

> consider all the evidence in the record, and make all reasonable factual inferences, in the light most favorable to the non-moving party. *See Crawford v. Carroll*, 529 F.3d 961, 964 (11th Cir. 2008). . . . At the outset, the moving party has the burden of demonstrating that there are no genuine issues of material fact, but once that burden is met the burden shifts to the nonmoving party to bring the court's attention to evidence demonstrating a genuine issue for trial. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

variety of defenses, including qualified immunity. Doc. 28-1. In their summary judgment filings they insist they were merely applying jail policy against the circulation of smut and weaponizable CD-ROM disks. Doc. 26-7 at 2 (Duncan attests that neither he nor his staff recall "Smooth" magazine even arriving at the jail, but even if it did, consultation of its 2012-2013 online version -- for the period when Stovall was in their jail -- reveals that they would have censored same "on the ground that it contains sexually explicit material."); doc. 26-3 at 2 (Pittman attests that she recalls no receipt of "Smooth" but, pursuant to jail policy, deferred to her supervisors' judgment on whether to place it in Stovall's property locker rather than deliver it to Stovall).

Under *Thornburgh v. Abbott*, 490 U.S. 401 (1987), and *Turner v. Safley*, 482 U.S. 78 (1987), Stovall's First Amendment rights[7] yield to a

---

Overcoming that burden requires more than speculation or a mere scintilla of evidence. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).

*Paylor*, 2014 WL 1363544 at * 3.

[7] As was recently explained:

A federal prisoner does not surrender his constitutional rights at the prison gates. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 129 (1977); *Wolf v. McDonnell,* 418 U.S. 539, 555–56 (1974). "Inmates clearly retain protections afforded by the First Amendment." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). These

prison regulation reasonably related to legitimate penological interests. *Turner*, 482 U.S. at 95. "The restrictions must be warranted by state interests related both reasonably and necessarily to the advancement of some justifiable purpose of imprisonment . . . ." 16A C.J.S. CONSTITUTIONAL LAW § 679 (Mar. 2014). But there is no clearly established law on what sexual content materials cannot be banned without violating the First Amendment.[8]

---

retained First Amendment rights include the right to send and receive mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safley*, 482 U.S. 78 (1987). " 'Conversely, prison officials have a duty to maintain security within the prison, and this may include reading inmates' incoming and outgoing mail, with the exception of legal mail.' " *Cotner v. Knight*, 61 F.3d 915, at *5 (10th Cir. July 21, 1995) (quoting *Thongvanh v. Thalacker*, 17 F.3d 256, 258–59 (8th Cir. 1994)).

*Reneau v. Mahoney*, 2014 WL 1224734 at * 8 (D. Colo. Mar. 25, 2014).

[8] An encylcopedist explains:

For purposes of determining the reasonableness of a prison regulation, where prison administrators draw distinctions between publications solely on the basis of their potential implications for prison security, the regulations are neutral in the technical sense. However, where regulations fairly invite prison officials and employees to apply their own personal prejudices and opinions as standards for prisoner censorship, they are decidedly not neutral in the relevant sense.

72 C.J.S. PRISONS § 67 (Mar. 2014) (footnotes omitted). Hence, subjectivity seems inescapable in the sexual content realm. Another encyclopedist proffers no bright line, only an outer limit:

While prison officials have great leeway, they may not be so overly broad in their determination to cleanse prisons of "smut" that they sweep out material

Here Stovall, who has since admitted to ultimately receiving (after he was transferred from the jail) one CD-ROM and some of his Smooth magazines, doc. 35 at 2,[9] does not otherwise challenge the stated jail policy censoring sexual content -- except to *speculate* that there simply must have been some non-smutty, print versions that *could* have been delivered to him. Doc. 32 at 8-9 (insisting, with no affidavit or record support, that the "Smooth" magazine samples submitted by the defense are more explicit than what the publisher, if instructed about content

---

that inmates ought to be allowed to possess. For this reason, the court in one case refused to grant summary judgment to defendants who had promulgated an all-encompassing regulation that banned any correspondence dealing with any depictions of "human sexual behavior," or "nudity which appeals to the prurient interest in sex." This regulation was so broad that it led to the rejection of artistic materials, letters with vague references to sex, and private diary entries. Among the items banned under the rule was a picture of Michelangelo's Sistine Chapel, artwork by Herrera, the Sports Illustrated swimsuit issue, and issues of Vanity Fair, Rolling Stone, and Maxim.

2 RIGHTS OF PRISONERS § 6:12 (footnotes omitted); *see also Owen v. Wille,* 117 F.3d 1235 (11th Cir. 1997) (prison officials did not violate prisoner's First Amendment rights by depriving him of access to publications with nude photos, given prison practice under which each publication sent to prisoner underwent review by at least three prison officials before being rejected), cited in *Gray v. Cannon,* ___ F. Supp. 2d ___, 2013 WL 3754191 at * 5 (N.D. Ill. July 16, 2013) (collecting cases). For federal prisons, incidentally, Congress has spoken, but its statute speaks merely to the authority to ban smut, rather than define what it is. *Jordan v. Sosa,* 577 F. Supp. 2d 1162 (D. Colo. 2008), cited in 2 RIGHTS OF PRISONERS § 6:12 (4th ed. Oct. 2013).

[9] He deposed that his daughter picked up his belongings when he was transferred out of the jail. She retrieved three issues of his "Smooth" magazine plus one of the two missing CD-ROM disks containing the Georgia law enforcement handbook. Doc. 26-2 at 50, 64. As previously noted, his property-loss claims are not viable in this forum.

limitations, would have sent to the jail); doc. 35 at 3. The Court agrees with the defendants that self-serving declarations like that create no fact issue. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (11th Cir. 1991).

Defendants have also shown that CD-ROMs can be weaponized and thus a valid jail policy bans them. Doc. 26-3 at 2 ¶ 10 ("Inmates are not permitted to have cd-roms due to the risk that they may be broken and the sharp edges may be used as a weapon. If an inmate is sent a cd-rom, it is the practice of jail staff to place it in the inmate's property locker."). Stovall does not challenge that justification, and admits that he ultimately received one of his CD-ROMs when he was transferred out of the jail. Doc. 32; doc. 26-2 at 50, 64. His CD-ROM-based claims thus fail.

Finally, qualified immunity shields government officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a constitutional or statutory right, and (2) that the right was clearly established at the time of the challenged conduct. *Ashcroft v. al-Kidd*, ___ U.S. ___, 131 S.Ct. 2074, 2080 (2011). Conduct violates clearly established law when "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* at 2083 (quotes, cite, and alterations

omitted); *Keith*, 2014 WL 1614291 at * 6-7. Once a defendant invokes qualified immunity, the plaintiff must rebut its applicability. *Keith*, 2014 WL 1614291 at * 7.

Since there is no clearly established law on the limits of sexual-content censorship,[10] the defendants are entitled to qualified immunity. *Stauffer*, 741 F.3d at 584-87 (state prison employees were immune from damages in their individual capacity to prisoner's claim that they violated his First Amendment free speech rights by confiscating his magazines under Sex Offender Treatment Program rule, where prisoner did not prove that those rights were clearly established at time of alleged violations). And Stovall has since been transferred out of the jail and into a state prison, doc. 26-1 at 8; doc. 26-2 at 63, so no injunctive relief could be sought without colliding with the mootness doctrine. Hence, defendants Duncan and Pittman are entitled to summary judgment.[11]

---

[10] *See supra*, n. 8 (collecting cases demonstrating a range of line-drawing in this area, and no clearly established law).

[11] The Clerk is DIRECTED to file two letters to the Court from defense counsel requesting the sealing of an attached "Duncan Exh. B," which is a printout of pages from "Smooth" magazine which counsel downloaded. Defendants cite no authority warranting the sealing of this non-pornographic material, and there is otherwise nothing about the material that overcomes the presumption of public access to this Court's docket. In the future, counsel should file a *motion*, not a *letter*, when they request judicial relief from the Court. Fed. R. Civ. P. 7(b)(1) (requiring that requests

## IV. CONCLUSION

The Court should **GRANT** defendants' motion for summary judgment (doc. 28) and **DISMISS** Dwayne Stovall's case **WITH PREJUDICE**.

**SO REPORTED AND RECOMMENDED** this 7th day of May, 2014.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

for judicial action be made "by motion"); *see* Local Rule 79.7 (directing that any person seeking to have a matter sealed "present a motion" explaining why the material should be available for public inspection).

# Georgia Department of Corrections

• Find an Offender
• Find a Facility
• Send Money
Home
About GDC▽
Divisions▽
Offender Information▽
Community Services▽
News▽
Reports▽
GDC Jobs
GA Sex Offender Registry

SHARE ▢ █ ✉ 🖂    ★ Translate Search: [_____] 🔍
TEXT

## Find an Offender

Click here to start over | Return to previous screen

The following represents the most recent information for this offender in our website database. However, this information is not delivered in "real time", and there may have been recent changes that are not displayed below. If you have questions, or find the below information incorrect, please contact/email us by clicking this link. Once you click the link, please select the category 'Information about a specific Offender/Transfers/County Jail Pick-up'

**STOVALL, DWAYNE DANTE**
GDC ID: 1001078616



PHYSICAL DESCRIPTION
| | |
|---|---|
| YOB: | 1969 |
| RACE: | BLACK |
| GENDER: | MALE |
| HEIGHT: | 6'00" |
| WEIGHT: | 220 |
| EYE COLOR: | BROWN |
| HAIR COLOR: | SLT&PEP |

SCARS, MARKS, TATTOOS

INCARCERATION DETAILS
| | |
|---|---|
| MAJOR OFFENSE: | CHILD MOLESTATION |
| MOST RECENT INSTITUTION: | RIVERBEND CORR FACILITY |
| MAX POSSIBLE RELEASE DATE: | 10/30/2021 Important Release Information |

For parole information please go to Georgia State Board of Pardons and Paroles website.

| | |
|---|---|
| ACTUAL RELEASE DATE: | CURRENTLY SERVING |
| CURRENT STATUS: | ACTIVE |

KNOWN ALIASES
| | |
|---|---|
| A.K.A. | STOVAL,DEWAYNE DANTE |
| A.K.A. | STOVALL,DWAYNE |
| A.K.A. | STOVALL,DWAYNE DANTE |

STATE OF GEORGIA - CURRENT SENTENCES
| | |
|---|---|
| CASE NO: 774327 | |
| OFFENSE: | CHILD MOLESTATION |
| CONVICTION COUNTY: | LIBERTY COUNTY |
| CRIME COMMIT DATE: | 05/15/2011 |
| SENTENCE LENGTH: | 20 YEARS, 0 MONTHS, 0 DAYS |
| CASE NO: 774327 | |
| OFFENSE: | SEX EXPLOITATION CHILD |
| CONVICTION COUNTY: | LIBERTY COUNTY |
| CRIME COMMIT DATE: | 05/15/2011 |
| SENTENCE LENGTH: | 20 YEARS, 0 MONTHS, 0 DAYS |

STATE OF GEORGIA - PRIOR SENTENCES

STATE OF GEORGIA - INCARCERATION HISTORY
| INCARCERATION BEGIN | INCARCERATION END |
|---|---|
| 06/25/2013 | ACTIVE |

Site Map
Privacy